UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-322-H

BRETT and LINDA DAVIS                                                                    PLAINTIFFS

V.

GLOBAL CLIENT SOLUTIONS, LLC
GHS SOLUTIONS, LLC,
ROCKY MOUNTAIN BANK & TRUST, and
JOHN AND JANE DOES A-K                                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

On behalf of a putative class, Plaintiffs Brett and Linda Davis ("Plaintiffs"), a Kentucky couple, brought suit against Defendants GHS Solutions, LLC ("GHS"), Global Client Solutions, LLC ("Global"), and Rocky Mountain Bank & Trust ("Rocky Mountain").[1] The suit arises out of Plaintiffs' participation in a debt settlement program. Subsequently, GHS, Global and Rocky Mountain have moved to compel arbitration.

These motions raise a host of questions concerning the enforcement of arbitration agreements, which Kentucky courts generally favor. However, the policy favoring arbitration must give way where the agreement to do so is procedurally or substantively unconscionable. For the reasons that follow, the Court will not enforce these arbitration agreements.

I.

In early 2009, Plaintiffs found themselves in a difficult financial situation due to, among other things, overwhelming credit card debt. Plaintiffs searched for a way to ease the debt, and

---

[1] Plaintiffs also brought suit against John and Jane Does A-K, whom they describe as unnamed managing agents of the other defendants who exercised close control, direction, and management with respect to the alleged corporate misconduct.

after responding to an advertisement, a GHS representative contacted them. GHS offers a debt settlement service, whereby it negotiates settlements with the creditors of its customers. GHS is a Florida corporation with its principal place of business in Delray Beach, Florida. It is not licensed to do business in Kentucky and is not licensed as a debt adjuster. After the initial contact between GHS and Plaintiffs, the parties continued to communicate via telephone and email. GHS claims that Plaintiffs signed the GHS Client Service Agreement on March 12, 2009. Plaintiffs deny that an agreement was signed. It is unclear at this point whether Plaintiffs actually signed the Client Service Agreement.

GHS explained that as part of the debt settlement program, Plaintiffs would need to open an account at Rocky Mountain through Global. Rocky Mountain is a bank under the laws of Colorado, with its principal place of business in Florence, Colorado. Global is an Oklahoma LLC with its principal offices in Tulsa, Oklahoma. Plaintiffs signed the Special Purpose Account Application with Global and Rocky Mountain on April 7, 2009, giving Global the authority to transfer funds collected from Plaintiffs' personal account at U.S. Bank into an account at Rocky Mountain. After depositing Plaintiffs' funds into the Rocky Mountain account, Global would then distribute the money among Plaintiffs' creditors. Global also pays fees to GHS from the Rocky Mountain account. From April 2009-March 2010, transfers were made into the Rocky Mountain account, and Global mailed Plaintiffs paper statements listing the transfers. During that time, GHS accepted fees in the amount of $3,523.32 from Plaintiffs, and nothing was paid to Plaintiffs' creditors.

In May 2010, Plaintiffs brought an action against GHS, Rocky Mountain and Global, citing violations of Kentucky's Debt Adjusting statute, its Consumer Protection statute, and

2

charging civil conspiracy. GHS filed a motion to compel arbitration and Rocky Mountain and Global filed a joint motion to compel arbitration.

II.

Under the Federal Arbitration Act ("FAA"), *9 U.S.C. §§ 1 et seq.*, "a written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting *9 U.S.C. § 2*).[2] The FAA promotes the "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

To determine whether to revoke an arbitration agreement, "the Court must turn to state contract law." *Johnson v. Career Sys. Dev./DJI Joint Venture*, No. 4:09CV-76-M, 2010 U.S. Dist. LEXIS 4052, at *4 (W.D. Ky. Jan. 20, 2010) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)). All parties here agree that Kentucky contract law is the applicable state law. In Kentucky, "a fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms," unless the agreement is unconscionable. *Schnuerle v. Insight Communications Co., L.P.*, No. 2009-SC-000390-DG, 2010 Ky. LEXIS 288, at *31-32 (Ky. Dec. 16, 2010) (quoting *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001)).

---

[2] Defendants and Plaintiffs agree that the FAA applies to both arbitration provisions.

"[T]he party seeking to enforce an agreement has the burden of establishing its existence, but once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement. The party seeking to avoid the arbitration agreement has a heavy burden." *Id*. at *31 (quoting *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 857 (Ky. 2004)).

III.

Assuming that the Defendants can establish the existence of validly entered into arbitration agreements,[3] Plaintiffs must establish that the agreements are unconscionable. The doctrine of unconscionability is recognized as a narrow exception to Kentucky's fundamental rule of enforcing validly executing contracts according to their terms. *Schnuerle*, 2010 Ky. LEXIS 288, at *32. While the exception is narrow, its application is particularly vital to maintaining fairness in the context of an arbitration. "[R]eview of arbitration clauses for unconscionability involves a two step process - first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)." *Id*. at *32-33 (citing *Conseco*, 47 S.W.3d at 343 n. 22). The Supreme Court of Kentucky recently clarified that a showing of either procedural and substantive unconscionability is sufficient to establish unconscionability. *Schnuerle*, 2010 Ky. LEXIS 288, at *33.

"Procedural unconscionability, also known as 'unfair surprise . . . pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.'" *Career Sys.,* 2010 U.S. Dist. LEXIS 4052, at *12

---

[3] The Court notes that while it seems that Rocky Mountain and Global has met their burden and established the existence of a valid arbitration agreement with Plaintiffs, there are serious questions as to whether GHS has met its burden. Nonetheless, the Court assumes the existence of a validly entered into agreement between Plaintiffs and GHS because the Court ultimately finds that the agreement is unconscionable.

4

(quoting *Conseco*, 47 S.W.3d at 343 n.22 (quotation omitted)). The Supreme Court of Kentucky recently held that an arbitration clause was not procedurally unconscionable where: "the clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way." *Schnuerle,* 2010 Ky. LEXIS 288, at *35-36.

"Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Career Sys.*, 2010 U.S. Dist. LEXIS 4052, at *12-13 (quoting *Conseco*, 47 S.W.3d at 343 n.22 (quotation omitted)). "As for substantive unconscionability, courts consider 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Schnuerle*, 2010 Ky. LEXIS 288, at *36 (quoting *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005)).

A.

The Client Service Agreement between GHS and Plaintiffs states, "[B]inding arbitration is the sole and limited remedy of the parties for all disputes, and that neither party may file or lend their claims to any action, class action, or act in a representative capacity for any class or administrative proceeding."

The Kentucky Supreme Court recently held that "an absolute ban upon class action litigation is unenforceable...as exculpatory, substantively unconscionable, and contrary to public policy." *Schnuerle*, 2010 Ky. LEXIS 288, at *19-20. A clause banning class actions is "an exculpatory provision which may effectively shield a company from liability for unlawful

5

activity." *Id*. at *19. The general rule is that "in no event can such an exculpatory agreement be upheld where either '(1) the interest of the public requires the performance of such duties, or (2) because the parties do not stand upon a footing of equality, the weaker party is compelled to submit to the stipulation.'" *Id*. (quoting *Meiman v. Rehab. Ctr., Inc.*, 444 S.W.2d 78, 80 (Ky. 1969) (citation omitted)).

In light of the Kentucky Supreme Court's recent decision in *Schnuerle v. Insight Communications Co., L.P.*, the Court finds that the arbitration agreement found in the Client Service Agreement between GHS and Plaintiffs is substantively unconscionable, and thus invalid.

B.

The Special Purpose Account Application, which Plaintiffs signed in order to do business with Rocky Mountain and Global, incorporates by reference an Account Agreement, which also contains an arbitration provision. The Account Agreement between Plaintiffs and Rocky Mountain and Global contains a provision that limits damages. In particular, it says, "Under no circumstances shall Global or [Rocky Mountain] ever be liable for any special, incidental, consequential, exemplary or punitive damages."[4]

Kentucky courts have repeatedly said that if a plaintiff asserts valid statutory or common law claims and an arbitration provision prevents the plaintiff from seeking all remedies available under those claims, the arbitration provision essentially prevents the plaintiff from meaningfully pursuing the claims. *Mort. Elec. Registration Sys. v. Abner*, 260 S.W.3d 351, 355 (Ky. Ct. App. 2008). A provision limiting remedies in such a way is a substantial waiver of a plaintiff's rights,

---

[4] This provision immediately follows the arbitration provision, and because damages would only be an issue in the context of an arbitration, the Court considers the damages provision as part of the arbitration provision.

and an arbitration clause that contains a substantial waiver of a party's rights is unenforceable. *Id*. at 354 (citing *Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 861-62 (W. Va. 1998)). The arbitration provision at issue in *Abner* limited damages to actual and direct damages. The Court held that the provision was substantively unconscionable because it prevented the plaintiffs from pursuing valid claims for statutory and common law damages. *Id*. at 355.

The arbitration provisions of the Account Agreement are similar to those in *Abner*. They serve as a substantial waiver of Plaintiffs' rights by preventing them from pursuing all available remedies. Therefore, they are unconscionable and unenforceable. In addition, the Court is very troubled by the arbitration provision's stipulation that Global and Rocky Mountain may choose the arbitrator without Plaintiffs' consent. The combination of both provisions supports a finding that the arbitration agreement in substantively unconscionable.

## IV.

Several motions remain pending.

Defendants have moved to dismiss on the grounds that (1) none of Defendants engaged in unconscionable practices which the Consumer Protection Act prohibits, and (2) Rocky Mountain Bank and Global Client Solutions are not in the business of debt collection and cannot be liable under the Consumer Protection or Debt Adjusting Acts. Plaintiffs have moved for leave to file an Amended Complaint, which includes additional allegations.

Both of these motions are now submitted. Having resolved the matter of arbitration, the Court will consider the remaining issues in due course.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that GHS's motion to compel arbitration is DENIED.

IT IS FURTHER ORDERED that Rocky Mountain and Global's motion to compel arbitration is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion to hold Defendants' motions to compel in abeyance pending discovery is MOOT, and therefore DENIED.

cc: Counsel of Record