UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-322-H

BRETT and LINDA DAVIS
PLAINTIFFS

V.

GLOBAL CLIENT SOLUTIONS, LLC
DEFENDANTS
GHS SOLUTIONS, LLC,
ROCKY MOUNTAIN BANK & TRUST, and
JOHN AND JANE DOES A-K

**MEMORANDUM OPINION AND ORDER**

The Court previously ordered the parties to file memoranda discussing the implications on this case of the recent United States Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). Having done so, Defendants, Global Client Solutions, LLC ("Global") and Rocky Mountain Bank & Trust ("Rocky Mountain"), renewed their motion to compel arbitration under the Account Agreement and Disclosure Statement ("Agreement"). Plaintiffs responded that a valid agreement to arbitrate was not reached and, in any event, the arbitration terms are unconscionable. Plaintiffs also moved to hold Defendants' motion in abeyance pending completion of discovery. Upon consideration of these motions, and for the reasons that follow, the Court will grant Defendants' motion to compel arbitration, thereby denying Plaintiffs' motion.

I.

Defendants first assert that Plaintiffs agreed to the arbitration provision and it should therefore be enforced. Plaintiffs counter that no agreement was concluded because they were not

provided with the arbitration terms until after applying for an account with Defendants.

Although Kentucky law generally favors the enforcement of arbitration agreements, a threshold matter the Court must resolve is whether a valid arbitration agreement exists. *Mt. Holly Nursing Ctr. v. Crowdus*, 281 S.W.3d 809, 813 (Ky. Ct. App. 2008). To show the absence of an agreement, Plaintiffs rely primarily on the Ninth Circuit decision in *Carlsen v. Global Client Solutions, LLC*, 423 F. App'x 697 (9th Cir. 2011) (unpublished), a case involving the defendants *sub judice*, based on the same arbitration provision and a similar factual sequence. In *Carlsen*, plaintiffs argued that they never actually agreed to arbitration because they applied for their account prior to receiving the Agreement (which included the arbitration clause). *Id*. at 698. Agreeing with this logic, the Eastern District of Washington and the Ninth Circuit affirmed that plaintiffs could not be bound by arbitration terms provided subsequent to formation of the parties' agreement. *Id*. at 699.

Although *Carlsen* appears to state a reasonable view of the generally applicable law, a slight but significant factual distinction suggests a different result. In our case, the Davises submitted a second application on April 7, 2009, after submitting their initial application and after receiving the Agreement. The parties do not dispute that Plaintiffs had received the Agreement prior to submitting their second application. Thus, on April 7, when Plaintiffs resigned the Agreement, it did include the arbitration provision which they had received. In *Carlsen*, the plaintiffs had submitted an account application before receiving the Agreement.

The Court concludes, therefore, that in our circumstances the parties did reach an agreement to arbitrate as described in the Agreement.

II.

Plaintiffs next urge the Court to reject the arbitration clause on grounds of unconscionability. Plaintiffs claim several aspects of the agreement are unconscionable, namely the (1) timing of Plaintiffs' receipt of the Agreement and other supporting documents; (2) inclusion of the arbitration provision in an adhesion contract; (3) limitation on Plaintiffs' legal remedies; (4) exculpatory clauses included in the adhesion contract; (5) inequality of bargaining power between the parties; (6) location of the arbitration provision in fine print; (7) unfair burden on Plaintiffs to pay enormous arbitration fees; and (8) Defendants' authority to singlehandedly select an arbitrator. The Court will discuss each of these arguments in turn.

A.

Challenges to the validity of an arbitration clause are properly heard before a court, while challenges to a contract as a whole must go to an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). Kentucky law strongly favors execution of arbitration provisions, as evidenced in KRS § 417.050 which provides that "a written agreement to submit any existing controversy to arbitration . . . is valid, enforceable and irrevocable . . . ." *Abell v. Bardstown Med. Investors, Ltd.*, No. 3:11-CV-86-H, 2011 WL 2471210, at *2 (W.D. Ky. 2011). Therefore, once a party seeking to enforce an arbitration provision establishes its existence, the opposing party then bears the burden of proving grounds for disregarding it. *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004). Here, Defendants have established that an agreement exists, and Plaintiffs must now show grounds for the Court to reject it.

Plaintiffs argue Defendants' arbitration provision is unconscionable. An unconscionable

contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other." *Abell*, 2011 WL 2471210 at *2. An arbitration clause can be unconscionable on both procedural and substantive grounds. *Id*. Procedural unconscionability "pertains to the process by which an agreement is reached and the form of the agreement, including the use therein of fine print and convoluted or unclear language." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. App. 2001). Substantive unconscionability relates to "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id*. at 343, n.22.

B.

In view of the foregoing, this Court's analysis here extends only to challenges of the arbitration provision itself, not the entire contract. *Buckeye Check Cashing*, 546 U.S. at 449. Because Plaintiffs' first four contentions concern the terms of the Agreement outside of the arbitration provision, their propriety appears outside this Court's mandate. Where this Court concludes that the arbitration provision itself is enforceable, the job of interpreting the contract and resolving its separate conscionability is properly left to the arbitrator. *See Francis v. Cute Suzie, LLC*, No. 3:10-CV-00704, 2011 WL 2174348 (W.D. Ky.). This leaves the Court to decide only on the (1) inequality of bargaining power between the parties; (2) location of the arbitration provision in fine print; (3) unfair burden on Plaintiffs to pay arbitration fees; and (4) Defendants' ability to choose an arbitrator.

Here, the arbitration provision agreed to by the parties is relatively short and reads:

> **Arbitration and Application of Law:** In the event of a dispute of claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration utilizing a qualified independent arbitrator of our choosing.

4

> Further, you agree that any arbitration shall take place in Colorado Springs, Colorado and that the laws of the State of Colorado shall apply. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.[1]

After reviewing this provision and Plaintiffs' remaining arguments, the Court is satisfied that the agreement is neither procedurally nor substantively unconscionable. First, although some inequity in bargaining power exists, it is outweighed by other factors. Kentucky courts have repeatedly emphasized that the doctrine of unconscionability "is directed against one-sided, oppressive and unfairly surprising contracts, and *not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.*" *Conseco*, 47 S.W.3d at 341 (emphasis added). Therefore, while the Court considers uneven bargaining power as a factor in our analysis, it is not the lynchpin of our decision. Although Defendants wrote the provision, Plaintiffs were well aware of the terms and clearly accepted them.[2] Afterall, Kentucky law presumes that parties to a contract have read its terms. *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011).

Second, Plaintiffs argue the location and size of the printed provision deem it unconscionable. The Court's review of the provision reveals that it appears in reasonably-sized font and is written in such a way that is easy to comprehend. Furthermore, it is conspicuously placed on the first page of the parties' Agreement. The Court finds that the provision is not unconscionable in these regards.

---

[1] Both defendants provided Plaintiffs with a separate arbitration agreement, and besides the state named in each for purposes of jurisdiction and choice of law, they are strikingly similar. Therefore, for purposes of analyzing unconscionability of the provision, the Court quotes only one of the agreements.

[2] The record reveals that Plaintiffs received a copy of the Agreement at least two times. In addition, Plaintiffs verbally acknowledged to Defendants that they understood all claims were subject to arbitration.

Third, Plaintiffs argue that the arbitration provision is unconscionable because it burdens Plaintiffs with enormous arbitration fees. However, the arbitration provision makes no mention of costs and fees. As the United States Supreme Court decided in *Green Tree Financial Corp.- Alabama v. Randolph*, invalidating an agreement on the basis of its silence regarding fees would "undermine the 'liberal federal policy favoring arbitration agreements.'"[3] 531 U.S. 79, 91 (2000). The Court will not presume that the costs resulting from an arbitration will be unconscionable.

### III.

Plaintiffs finally argue the arbitration clause is unenforceable because it grants Defendants sole control over the selection of an arbitrator. The parties' Agreement allows Defendants to choose an arbitrator that is "qualified and independent." This contention warrants more discussion than the previous three.

The Federal Arbitration Act ("FAA") was created to facilitate the uniform enforcement of arbitration agreements. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). Thus, "[t]he effect of the Arbitration Act is . . . to create a body of substantive federal law on arbitration governing any agreement that is within the Act's

---

[3]The Supreme Court explained:
> It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that [Plaintiff] will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack . . . information about how claimants fare under [Defendant's] arbitration clause." *The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable.* The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

531 U.S. 79, 90-91(2000) (citation omitted) (emphasis added).

6

coverage." *Foster v. Turley*, 808 F.2d 38 (10th Cir. 1986). Section 5 of the FAA provides procedural safeguards in disputes between parties arising from the selection of an arbitrator. It states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed; but if no method be provided therein, or if a method be provided and *any party thereto shall fail to avail himself of such method,* or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, *then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators* or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. The FAA further furnishes the remedial measure of allowing parties to challenge awards determined by a partial or corrupt arbitrator. 9 U.S.C. § 10(a)(2).

Plaintiffs challenge the Defendants' sole authority to select an arbitrator. The question of whether this clause is unconscionable is difficult to answer, as there is no binding precedent that provides a clear answer. On balance, however, it seems clear that on its face, the provision is not unconscionable. In addition, the FAA adequately redresses any concern that might arise concerning its actual application.

First, Defendants may in fact choose an arbitrator with whom Plaintiffs are entirely satisfied. After all, Defendants' bad faith exercise of the provision would be unreasonable and grounds for an objection. On its face, the provision provides that Defendants must choose an independent and qualified arbitrator. In theory, Defendants will comply, and the clause will not result in injustice to Plaintiffs.

Second, even if Defendants choose an arbitrator that is unqualified or partial, Plaintiffs

7

have adequate protection and available remedies. Section 5 of the FAA allows Plaintiffs to object to Defendants' appointment and ask the Court to appoint a neutral arbitrator. Should Plaintiffs not recognize that a challenge is warranted until after the arbitrator's decision, the remedial provisions of Section 10(a)(2) appear to contain additional protection. Because the clause as it is written is not unconscionable, and because the FAA adequately protects Plaintiffs, the Court rejects Plaintiffs' arguments. Having established that the Agreement's arbitration provision is not unconscionable, compliance with the FAA requires the Court to stay this action pending arbitration.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to compel arbitration is SUSTAINED and this matter is STAYED until further order of this Court.

This is a final order.

cc: Counsel of Record